UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEANDIEL SERRANO,<br><br>Defendant. | Criminal Action No. 24-417-2 (CKK) |

**MEMORANDUM OPINION**
(October 18, 2024)

Defendant Jeandiel Serrano was charged by indictment with conspiring to commit wire fraud and launder hundreds of millions of dollars in cryptocurrency. Serrano was arrested in Los Angeles, California and appeared before Magistrate Judge Steve Kim of the United States District Court for the District of California. Serrano now appeals Magistrate Judge Kim's order detaining him pending trial. Because no conditions of release can assure Serrano's appearance in this matter, the Court **DENIES** Serrano's [17] Motion to Revoke Detention Order.

**I. BACKGROUND**

The Government alleges that "Serrano and his co-conspirators executed one of the largest cryptocurrency thefts from a private individual ('the victim') in the history of the United States." Gov't Mem. in Supp. of Detention, ECF No. 13 at 2 ("Gov't Opp'n"). The Government alleges and offers demonstrative evidence that Serrano coordinated a sophisticated digital fraud to dupe the victim into providing means for Serrano and his co-conspirators to access and steal over 4,100 Bitcoin valued at more than $240 million. *Id.* at 3–5. The Government further alleges that Serrano then employed sophisticated techniques to launder that Bitcoin through multiple cryptocurrency exchanges, transferred tens of millions of dollars in cryptocurrency to himself, and spent that money on a variety of luxury purchases. *Id.* at 5–8.

1

On September 18, 2024, Serrano was arrested at Los Angeles International Airport after returning to the United States from a vacation in the Maldives with his girlfriend.  After initially denying any knowledge of the theft, Serrano agreed to speak with law enforcement without an attorney and admitted to much of the conduct described above.  *Id.* at 8.  Among other things, Serrano informed law enforcement that a portion of his proceeds from the theft is still tied up on cryptocurrency exchanges and in the hands of money launderers.  *Id.*  More than $100,000,000 of cryptocurrency stolen from the victim remains at large.  Gov't Suppl. Mem., ECF No. 18 at 2.

After his arrest, Serrano was interviewed by Pretrial Services agents from the Central District of California.  Gov't Opp'n at 9.  Those agents prepared a report stating that Serrano— who is 21 years old—lives in a rented home in California, has no job, has no spouse or children, and owns multiple cars that are not titled in his name.[1]  Their report concluded that no conditions or combination of conditions would reasonably assure Serrano's appearance at future proceedings and recommended that Serrano be detained pending trial "due to risk of non-appearance."

On September 19, 2024, Serrano appeared before Magistrate Judge Kim in the Central District of California.  *See* Rule 5(c)(3) Docs., ECF No. 8 at 10.  The Government moved for an order detaining Serrano pretrial because of "a serious risk that the defendant will flee."  *Id.* at 11.  During the hearing, Magistrate Judge Kim brought the parties' attention to that motion and the Pretrial Services report "recommending detention."  Hearing Tr., ECF No. 17-2 at 5:13–15.  When Magistrate Judge Kim asked Serrano's counsel whether he was "arguing for bond today," Serrano's counsel said he was not doing so.  *Id.* at 5:18–20.  Magistrate Judge Kim then issued an order "that the defendant be detained until trial" for the "[r]easons set forth in [the Pretrial Services] Report adopted by [the] Court."  ECF No. 8 at 12–13.

---

[1] The Court has obtained and reviewed a copy of this confidential report—which is not docketed publicly—from the Central District of California.

2

Serrano now "comes before this Court and asks that it revoke Magistrate Judge Kim's order detaining" him. Mot. to Revoke Detention Order, ECF No. 17 at 2 (the "Motion" or "Def.'s Mot.").

## II. LEGAL STANDARD

When a magistrate judge orders a defendant detained pending trial, "the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of that order." 18 U.S.C. § 3145(b). The U.S. Court of Appeals for the District of Columbia Circuit has "not squarely decided" the standard of review for such motions. *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021). But every circuit to address the issue has held that a district court's review of a magistrate's detention order is *de novo*. *See United States v. Chrestman*, 525 F. Supp. 3d 14, 23 & n.5 (D.D.C. 2021) (BAH) (collecting cases). And this Court has adopted that position. *See United States v. Brown*, No. 23-cr-73-10, 2023 WL 7017750, at *1 (D.D.C. Oct. 25, 2023) (CKK).

On *de novo* review, the question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). And that inquiry is guided by the Bail Reform Act's familiar four-factor test, under which the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure

3

the safety of any other person and the community.'" *Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). Although the statute is silent as to the level of proof required to establish risk of flight, the D.C. Circuit has held that such a finding need only be supported by a "preponderance of the evidence." *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

In communications with the Court and the Government regarding scheduling, Serrano requested a hearing on his Motion. That request does not appear in his Motion. Nevertheless, in an exercise of its discretion, the Court finds that holding oral argument is unnecessary because the papers provide sufficient information. *See* LCrR 47(f) (according the Court discretion to grant or deny a request for hearing made in a motion or opposition). Moreover, Magistrate Judge Kim already held a detention hearing.[2] Accordingly, the Court considers any requirement under Section 3142(f) to hold such a hearing satisfied. *See United States v. McSwain*, No. 19-cr-80, 2019 WL 1598033, at *3 (D.D.C. Apr. 15, 2019) (CKK).

### III. ANALYSIS

Having considered the parties' briefing, the present record before it, the recommendation of Pretrial Services, and the relevant law, the Court concludes that pretrial detention is proper because it finds by a preponderance of the evidence that Serrano presents a flight risk. That conclusion is guided by the Section 3142(g) factors.

#### A. Nature and Circumstances of the Offense Charged

The first Section 3142(g) factor—the "nature and circumstances of the offense charged"—weighs heavily in favor of detention. Serrano is charged with coordinating and participating in a sophisticated digital fraud involving cryptocurrency. That fraud resulted in the theft of hundreds

---

[2] *See* ECF No. 8 at 11 ("The Court conducted a detention hearing . . . ."). Serrano now claims that his then-attorney did not object to detention because he misunderstood the stakes of that hearing. Def's Mot., ECF No. 17 at 2. But Serrano's failure to object to his pretrial detention at his detention hearing does not change the nature of that hearing. And it is not the case—as Serrano argues—that a detention "hearing was not held." *Id.*

4

of millions of dollars in cryptocurrency from the victim which has since been laundered through and distributed to multiple accounts, exchanges, and third parties. Gov't Opp'n at 5–8. More than $100,000,000 of that cryptocurrency remains unaccounted for—and presumably accessible to Serrano, who has admitted that he has prior experience in engaging in cryptocurrency frauds. *Id.* at 11. And the inherently covert nature of cyber-crime involving cryptocurrency creates a risk that further efforts to access those funds will go undetected, particularly given Serrano's alleged use of virtual private networks and other tools to mask his identity and activities online. *See id.* at 5–6.

As Serrano observes, the Government does not allege Serrano engaged in violence, threats, or extortion in the commission of his alleged crimes. Def.'s Mot. at 3. But the Government has provisionally calculated an estimated guidelines range of 27 to 34 years of incarceration in the event Serrano is convicted. *See* Gov't Suppl. at 2. And the Court has serious concerns that such a substantial penalty will further exacerbate Serrano's flight risk.

### B. Weight of the Evidence

The weight of the evidence against Serrano also strongly favors continued pretrial detention. To be clear, the purpose of assessing this evidence pretrial is not to punish a defendant for crimes he has not yet been shown to have committed. *See United States v. Blackson*, No. 23-cr-25, 2023 WL 1778194, at *9 (D.D.C. Feb. 6, 2023) (BAH). Rather, this factor reflects the intuition that "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings." *Id.* at *10. Here, the Government's evidence against Serrano is overwhelming.

The Government has produced screenshots that purportedly depict Serrano coordinating the fraud against the victim with his co-conspirators in online messaging platforms. Gov't Opp'n at 3–5. The Government has further proffered that the IP address associated with Serrano's rental

home was used to open an "account that deposited nearly $30 million in stolen cryptocurrency." *Id.* at 12. When Serrano was arrested, he possessed around $20 million of the victim's stolen cryptocurrency on his phone. *Id.* at 8. And in a recorded interview with the FBI, Serrano admitted to participating in the charged scheme, laundering the funds, and using stolen funds for luxury purchases. *Id.* The collective weight of this evidence strongly favors Serrano's detention.

### C. History and Characteristics of the Defendant

Under the third section 3142(g) factor, the Court must consider a defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3). Although a closer question than the first two factors, this factor also weighs in favor of Serrano's continued detention.

Serrano has "absolutely no criminal history." Def.'s Mot. at 4. That weighs against his pretrial detention. *See United States v. Brockhoff*, 590 F. Supp. 3d 295, 305 (D.D.C. 2022) (CKK). But other considerations still raise serious concerns about Serrano's risk of flight.

Serrano is not employed. Pretrial Services Report, ECF No. 11 at 2. He is not enrolled in school. *Id.* He has no spouse or dependents. *Id.* at 1. He does not own a home. *Id.* And he has given conflicting accounts of his current and past residences to Pretrial Services agents in California and the District of Columbia. *See* Gov't Suppl. at 1. In short, Serrano does not appear to have significant ties to any particular location.

Serrano argues he has strong community ties in Bridgeport, Connecticut where his mother, grandmother, and minor sibling live—and where he would reside if released. Def.'s Mot. at 4. But Serrano lived thousands of miles from Bridgeport at the time of his arrest. *See id.* And even

if Serrano has sufficiently strong ties in Connecticut, the Court has serious concerns about the extent of his supervision there. Serrano seeks release to the third-party custody of his mother. *Id.* But Serrano's mother works a full-time job and is thus away from home for most of the day. ECF No. 7-3 at 1. Indeed, even though Pretrial Services deemed Serrano's mother eligible to serve as a third-party custodian, they specifically cited her "work schedule" as a reason to "defer to the [C]ourt." *Id.* The Court has no reason to doubt the diligence or sincerity of Serrano's mother, but the Court agrees with the Government that third-party custody in her care under these circumstances cannot prevent Serrano's flight from prosecution or continued criminal conduct.

That conclusion is bolstered further by Serrano's past conduct. Serrano admitted to being able to access $20 million in stolen funds from his cellphone at the time of his arrest. Gov't Opp'n at 8. He admitted that he has engaged in cryptocurrency fraud beyond the charged conduct for about two years. *Id.* He admitted to owning multiple cars that are not titled in his name and which have not been located. *Id.* at 9, 13. He admitted that significant sums of stolen cryptocurrency are still in the hands of his co-conspirators. *Id.* at 8. And those co-conspirators are alleged to have ready access to private jets. *Id.* at 8, 11. In sum, although Serrano has limited contacts abroad and has surrendered his passport, Def.'s Mot. at 4, he has the demonstrated technical skill to access millions of dollars and covert forms of transportation from any internet-connected device.

With Serrano's mother absent from the home for most of the day, the Court shares the Government's concern that "it would be virtually impossible for her to ensure that he does not use the phone, computer, or internet." Gov't Suppl. at 2. And for the reasons explained, Serrano's access to the internet or his co-conspirators poses a serious risk that he may flee, engage in further cybercrime, or obstruct justice. Thus, the Court concludes the third Section 3142(g) factor favors Serrano's continued detention.

7

**D. The Nature and Seriousness of the Danger Posed by Defendant's Release**

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). This factor also weighs in favor of detention.

Serrano does not appear to pose any threat to the physical safety of the community or others. The Government has not alleged that Serrano engaged in violence, threats, or extortion. Def.'s Mot. at 4. Serrano has no evident history of violence. And there are no allegations that Serrano has access to any weapons. *Id.*

But the Government has adduced sufficient evidence to give the Court pause as to the possibility that Serrano will engage in further financial crimes if he is released. The Government has alleged, and appears poised to support with substantial evidence, that Serrano perpetrated a massive fraud against a citizen of the District of Columbia. And given the nature of Serrano's alleged crime, and his admitted history of engaging in similar conduct before, the Court is concerned that releasing Serrano into the community will allow him the opportunity to perpetrate new frauds pending trial. As other courts in this District have recognized, a defendant's ability to engage in "unmonitorable financial transactions" in the context of a cryptocurrency-fraud prosecution presents a "danger to the community" justifying pretrial detention. *E.g.*, *United States v. Boutros*, No. 19-mj-264, 2019 WL 6877756, at *5–6 (D.D.C. Dec. 17, 2019) (DAR).

This final factor, like the three that preceded it, thus weighs in favor of Serrano's continued pretrial detention.

**IV. CONCLUSION**

On the whole, the record before the Court establishes, by a preponderance of the evidence, that Serrano is a flight risk such that no condition or combination of conditions can be imposed

8

that would reasonably assure Serrano's appearance. As such, the Court **DENIES** Serrano's [17] Motion to Revoke Detention Order. An appropriate order accompanies this memorandum opinion.

**Dated:** October 18, 2024

                                                      /s/  
                                               COLLEEN KOLLAR-KOTELLY  
                                               United States District Judge